**Christopher R. Kelly**
**Jennifer C. Barry***
**Brendan P. McGlynn***
**Patricia A. Paw***
**SECURITIES AND EXCHANGE COMMISSION**
**Philadelphia Regional Office**
**1617 JFK Boulevard, Suite 520**
**Philadelphia, PA  19103**
**KellyCR@sec.gov**
*Not admitted in the U.S. District Court for the Southern District of New York

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**DONALD G. BLAKSTAD, ENERGY SOURCES INTERNATIONAL CORPORATION, and XACT HOLDINGS CORPORATION,**<br><br>Defendants. | 20-CV-163<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against defendants Donald G. Blakstad ("Blakstad"), Energy Sources International Corporation ("ESI"), and Xact Holdings Corporation ("Xact Holdings" and, collectively with Blakstad and ESI, "Defendants") and alleges as follows:

**SUMMARY**

1. This matter involves an offering fraud orchestrated by Blakstad in which he raised approximately $3.544 million from at least 14 investors through the fraudulent offer and sale of securities in three companies he owned and controlled.  Instead of investing as promised,

Blakstad used the majority of investor proceeds for his personal benefit, including spending funds on personal entertainment, the purchase of a stake in a nightclub, the purchase of a luxury automobile, and to fund illicit securities trading.

2. Between at least July 2015 and May 2019, Blakstad raised funds through (1) Midcontinental Petroleum, Inc. ("Midcontinental"), a purported oil, gas, and alternative energy resources company; (2) ESI, a purported cryptocurrency mining operation; and (3) Xact Holdings, a company formed to acquire a Canadian manufacturer of industrial vehicle components ("Canadian Company").

3. Defendants induced investors to purchase securities in these companies by making a number of materially false and misleading statements and omissions concerning the use of investor proceeds and the business operations of Midcontinental.

4. With respect to Midcontinental, Blakstad told investors that their money would be used to fund start-up and other costs related to oil, gas, and alternative energy exploration, including the acquisition of land leases and other equipment needed for energy exploration, extraction, and storage. In connection with ESI, Blakstad and ESI told investors that their funds would be used to purchase equipment and cover "start-up costs" for ESI's purported cryptocurrency mining operations. And for Xact Holdings, Blakstad and Xact Holdings told investors that their funds would be used to acquire Canadian Company and to lease facilities in Houston, Texas. Each of these representations was false.

5. Rather than using the investor funds as stated, Blakstad treated the funds in the company bank accounts as his own personal piggybank.

6. In addition, Blakstad used investor funds to make payments to Individual 1, who introduced certain investors to Blakstad or otherwise solicited investments for him.

7. By engaging in the conduct described in this Complaint, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin such acts, transactions, practices, and courses of business and to obtain disgorgement, prejudgment interest, civil money penalties, an officer-and-director bar against Blakstad, and such other and further relief as the Court may deem just and appropriate.

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

10. Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Among other things, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within the Southern District of New York.

## DEFENDANTS

11. **Blakstad**, age 60, is a resident of San Diego, California and Las Vegas, Nevada. Blakstad owns, controls, and holds executive officer positions in Midcontinental, ESI, and Xact Holdings. From July 2009 until at least October 2010, Blakstad served as Chairman of the Board of Wind Energy America, Inc., which at that time was a publicly-held, Minnesota-based

company that purportedly owned and operated wind turbines.  In July 2019, Blakstad was charged both civilly by the Securities and Exchange Commission and criminally by the United States Department of Justice with insider trading in the securities of Illumina, Inc.

12. **Energy Sources International Corporation** was first incorporated in Nevada in August 2015, and Blakstad is its President and sole employee.  ESI purports to operate a cryptocurrency mining data center located in Las Vegas, Nevada.

13. **Xact Holdings Corporation** was incorporated in Delaware in September 2018, and Blakstad is its Chief Executive Officer and sole employee.  Xact Holdings was formed to acquire Canadian Company, a manufacturer of industrial vehicle components.

## OTHER RELEVANT ENTITY

14. **Midcontinental Petroleum, Inc.** was incorporated in Nevada in March 2014 and lists its principle place of business in Las Vegas, Nevada.  Blakstad founded Midcontinental, is its Chief Executive Officer and a director, and is its sole employee.  Midcontinental purports to be in the business of investing in the energy industry through the purchase of land and assets used for oil, gas, and alternative energy production and for electric energy storage.

## FACTS

### Background

15. From July 2015 through May 2019, Blakstad directly or indirectly raised approximately $3.544 million from at least 14 investors through the fraudulent offer and sale of securities in three companies he owned and controlled:  (1) Midcontinental; (2) ESI; and (3) Xact Holdings.

16. These entities were fledgling companies at best with little to no actual business operations and few concrete prospects for profitable operations.

**Midcontinental Offering Fraud**

17. Between July 2015 and August 2018, Blakstad directly or indirectly sold securities in Midcontinental to at least seven individuals for a total of approximately $1.469 million.

18. Blakstad solicited investors during in person meetings, on the telephone, through email, or indirectly through Individual 1.

19. Blakstad made oral representations and used written materials with certain investors, including a Midcontinental Private Placement Memorandum (the "PPM") and pamphlets that summarized specific investment projects containing detailed financial information and anticipated profitability (the "Pamphlets"). Among other things, Blakstad falsely told certain investors that their investment in Midcontinental would be used to fund start-up and other costs related to oil, gas, and alternative energy exploration, including the acquisition of land leases and other equipment needed for energy exploration, extraction, and storage.

20. The PPM, which Blakstad provided to several prospective investors by email, disclosed that Midcontinental was issuing investment units (the "Investment Units") in Midcontinental that consisted of a $10,000 convertible debenture (the "Debenture") and 10,000 common stock purchase warrants (the "Warrants").

21. The PPM stated that the Debentures, which had three-year terms, were convertible at any time into common stock and bore annual interest of 6% payable in cash or common stock. Midcontinental had the option of satisfying the Debentures at expiration with payment in cash or issuance of common stock.

22.     According to the PPM, Midcontinental's mission and business strategy was designed to create a diversified portfolio of oil and gas properties and other energy-related investments, including solar power and electricity energy storage.

23.     The PPM also stated that investor proceeds would be used to acquire oil and gas interests and energy storage investments, and that a small percentage of investor funds would be kept available for administrative and other working capital purposes, including making quarterly interest payments on the Debentures.

24.     The Pamphlets that Blakstad distributed contained, among other things, financial projections that identified earnings from specific energy projects; however, Blakstad and Midcontinental had no agreements to participate in these projects, and expended little to no money to participate in these projects.

25.     For example, in February 2016, Blakstad sent one investor financial projections for a compressed air energy storage project.  The financial summary estimated total energy revenue and operating cash flow of $447.5 million and $327.5 million, respectively, over the project's 20-year lifespan.  Blakstad did not use investor proceeds on this purported air energy storage project.

26.     In June 2018, Blakstad sent another investor a series of documents and financial projections for a different alternative energy project:  a massive solar farm project to be constructed in the Mojave Desert.  Blakstad's financial projections estimated cumulative energy sales and green energy credits of $299.4 million and operating cash flow of $277.8 million over the solar farm's 25-year lifespan.  Blakstad estimated the project's return on investment at 32.9% and expected a full "payback" on its $71.8 million equity investment in less than two years.  Again, Blakstad did not use investor proceeds on this purported alternative energy project.

27. Blakstad deposited investor checks or otherwise received investor money from wire transfers into a Midcontinental bank account that he controlled.

28. Blakstad did not use the vast majority of investor proceeds in a manner consistent with the PPM and did not otherwise conduct any business arguably associated with oil, gas, or other energy exploration business.

29. Blakstad used at least $1.2 million, or 82 percent, of the more than $1.4 million raised for Midcontinental for his personal benefit.

30. For example, Blakstad used Midcontinental investment money to pay for: entertainment, including hotels, travel, and restaurants; a minority interest in a night club; and other personal expenses, including a Mercedes Benz. Blakstad also used $110,000 of the funds to purchase Illumina securities in October 2016—which, among other trades, is the subject of the Securities and Exchange Commission's and United States Department of Justice's insider trading cases against him—and withdrew a significant amount in cash.

**ESI Offering Fraud**

31. Between December 2017 and May 2018, Blakstad and ESI directly or indirectly sold securities in ESI to at least five individuals for a total of approximately $550,000.

32. Blakstad and ESI told prospective investors that ESI was a business involved in cryptocurrency mining, and would use investor funds to purchase equipment and cover "start-up costs."

33. Blakstad, in his capacity as ESI's president, sent an email to prospective investors representing that ESI had "developed a world-class data center for crypto currency mining." Blakstad's email stated that the mining operation "offer(s) a unique opportunity for people looking to make large investments in the crypto currency mining space." It further stated that

"we offer investors the ability to purchase the mining equipment and lease back to ESI. Or to make an equity investment in the Company."

34. After receiving investor funds from the sale of ESI securities, Blakstad deposited the money into an ESI bank account that he controlled.

35. Blakstad used at least $270,000 of the ESI investors' funds for his personal expenditures, which included cash withdrawals, hotel, casino and restaurant expenses, and payments for other personal items.

36. Additionally, although ESI was not profitable, Blakstad and ESI issued nearly $60,000 in checks to investors as a purported return on their investments.

## Xact Holdings Offering Fraud

37. Between October 2018 and May 2019, Blakstad and Xact Holdings directly or indirectly sold securities in Xact Holdings to at least four investors for a total of approximately $1.525 million.

38. In 2018, Blakstad and Xact Holdings entered into discussions to purchase Canadian Company, which claimed to be involved in supplying equipment for vehicles and machines used by the U.S. military and the oil industry.

39. In September 2018, Blakstad formed Xact Holdings, and they began soliciting investors to fund its purported business plan to purchase Canadian Company.

40. Blakstad, acting as Xact Holdings' CEO, represented in telephone and email contact with prospective investors that investor funds would be used to acquire Canadian Company and to lease facilities in Houston, Texas.

41. Blakstad and Xact Holdings told at least one prospective investor that either Xact Holdings or Canadian Company recently signed a large contract worth $9 million with an unknown party.

42. One individual, who collectively invested $500,000 on October 22, 2018, and May 21, 2019, entered into an agreement with Blakstad that confirmed his investment in Xact Holdings and stated that invested funds would be used to "help expand and grow the company in Houston Tx." This agreement also gave the investor the option to make a future additional investment in the company.

43. The Xact Holdings investor funds were comingled into a bank account in the name of Xact Holdings and controlled by Blakstad.

44. In March 2019, Blakstad and Xact Holdings entered into an agreement to purchase Canadian Company for $10 million, and immediately thereafter used investor funds to make the initial payment of $750,000 to Canadian Company.

45. Blakstad and Xact Holdings raised an additional $775,000 of investor funds after March 2019, but used nearly $700,000 of those funds for Blakstad's personal benefit instead of using the money consistent with his representations to investors. Specifically, Blakstad spent money on hotels, restaurants, shopping sprees, personal credit card payments, and withdrew significant amounts of cash.

## Defendants Violated the Federal Securities Laws

46. At all relevant times, Blakstad owned, operated, and controlled Midcontinental, ESI, and Xact Holdings.

47. The investments in Midcontinental, ESI, and Xact Holdings offered and sold by Defendant were securities within the meaning of the Securities Act and Exchange Act.

48. The investments in Midcontinental, ESI, and Xact Holdings were all in a common enterprise run by Blakstad, with the expectation of profits to be derived solely from his efforts.

49. Investors played no role in the management or operations of the businesses of Midcontinental, ESI, or Xact Holdings.

50. Investors provided Blakstad with money—between at least July 2015 and May 2019, approximately 14 investors gave Blakstad approximately $3.544 million.

51. Investors made their investment with a reasonable expectation of profits to be derived solely from Blakstad's alleged ability to generate profits without any participation by any of its investors.

52. Blakstad and ESI engaged in the offer and sale of the securities of ESI by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.

53. Blakstad and Xact Holdings engaged in the offer and sale of the securities of Xact Holdings by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.

54. Directly or indirectly, Defendants made materially false and misleading statements and omissions concerning the use of investor proceeds, and Blakstad made materially false and misleading statements and omissions concerning the business operations of Midcontinental.

55. Defendants, directly or indirectly, knowingly or recklessly made material untrue statements and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56.   A reasonable investor would consider the misrepresented facts and omitted information described herein—including, among other information, misrepresentations and omissions regarding the business operations of Midcontinental and Blakstad's use of investors' money to pay for his personal expenses—important in deciding whether or not to purchase the securities.

57.   The untrue statements of material fact and material omissions described herein were made in the offer or sale and in connection with the purchase or sale of securities.

58.   In connection with the conduct described herein, Defendants acted knowingly or recklessly. Defendants knew or was reckless in not knowing that Defendants were making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances.

### FIRST CLAIM FOR RELIEF
**(Violations of Section 17(a) of the Securities Act)**

59.   The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 58, inclusive, as if they were fully set forth herein.

60.   By engaging in the conduct described above, Defendants knowingly or recklessly, in the offer or sale of securities, directly or indirectly, by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

   a.   employed devices, schemes, or artifices to defraud;

   b.   obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c.   engaged in transactions, practices, or courses of business which operated or

would operate as a fraud or deceit upon purchasers of securities.

61. By engaging in the foregoing conduct, Defendants violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)

62. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 58, inclusive, as if they were fully set forth herein.

63. By engaging in the conduct described above, Defendants knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails or of any facility of a national securities exchange:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

64. By engaging in the foregoing conduct, Defendants violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

**I.**

Permanently restraining and enjoining Defendants from, directly or indirectly, violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

**III.**

Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and/or Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78(u)(d)(3)];

**IV.**

Prohibiting Blakstad from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and

V.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Date: January 8, 2020

Respectfully submitted,

/s/ Christopher R. Kelly
Christopher R. Kelly
Jennifer C. Barry*
Brendan P. McGlynn*
Patricia A. Paw*
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
(215) 597-3741 (Kelly)
KellyCR@sec.gov

*Not admitted in the S.D.N.Y.